ARMSTRONG, P. J.
*730 *2 The issue in this case is whether the trial court erred in denying defendant's motion to dismiss the punitive contempt case against him because, he contends, the court lacked subject-matter jurisdiction over the contempt complaint. We conclude that the court did not err and, accordingly, affirm.
The facts, for purposes of appeal, are not disputed. In 1998, the Clackamas County Circuit Court entered an order approving an administrative order requiring defendant to pay child support of $204 per month, beginning December 1, 1997. In April 2012, the state sent defendant a notice of intent to transfer enforcement of the support order from Clackamas County Circuit Court to Multnomah County Circuit Court. Later that month, the state notified defendant that the case had been transferred and provided defendant with a copy of the packet that was filed with the court when the case was transferred. Defendant's case history record with the Support Enforcement Division (SED), which was admitted as evidence at trial, indicates Multnomah as the "CURRENT COUNTY" and contains a "TRANSFER ORDER" entry on July 17, 2012.
In May 2014, defendant was charged with contempt of court for willfully disobeying the support order.[1] He waived counsel and represented himself. At his arraignment and throughout the contempt proceedings that followed, defendant repeatedly challenged the court's jurisdiction, insisting that he was making a "special appearance" solely for that purpose and objecting to the state's authority to bring a claim against him. His arguments appeared to incorporate legal theories of the "Sovereign Citizen" movement.[2] He also *3 submitted a "Jurisdictional Challenge" affidavit, which did the same.
The court rejected defendant's arguments, concluding that it had jurisdiction of the case under the general contempt statutes, ORS 33.015 to 33.155.[3] At the conclusion of the *731 contested contempt hearing, the court entered a judgment finding defendant in contempt of court for failure to pay child support as alleged by the state and imposing a 100-day jail term, suspended, and 24 months' bench probation. Defendant appeals that judgment.
On appeal, defendant, who is now represented by counsel, does not contest the merits of the contempt finding but asserts that the judgment should be reversed because the court lacked subject-matter jurisdiction to hear the case. The gravamen of defendant's argument on appeal is that the court erred in concluding that it had subject-matter jurisdiction under the general contempt statutes, ORS chapter 33, because, according to defendant, "[t]he inherent authority of courts to enforce their own orders does not extend to enforcing other courts' orders" and "there was no evidence that [the transfer of the case to Multnomah County] comported with the requirements of the transfer statute," ORS chapter 25. He contends that his challenge to the court's subject-matter jurisdiction is preserved. Specifically, in his first assignment of error, he contends that the court erred "by denying [his] motion to *4 dismiss for lack of subject matter jurisdiction," apparently referring to his oral challenges to the court's jurisdiction and his Jurisdictional Challenge affidavit. Alternatively, in his second assignment of error, he urges us to "find in the first instance that the record is insufficient to support subject matter jurisdiction."
The question that defendant raises on appeal was not preserved in the trial court. Although defendant repeatedly challenged in the proceedings below the court's jurisdiction generally and the state's authority to make a claim against him, as we understand it, the substance of defendant's argument was that no Oregon state court had jurisdiction over him in this matter, not that Multnomah County Circuit Court was the wrong court; that is, defendant certainly did not argue below, as he does on appeal, that Multnomah County Circuit Court did not have subject-matter jurisdiction under the general contempt statutes in ORS chapter 33 because the child support order had been entered in Clackamas County and was not properly transferred to Multnomah County under ORS chapter 25.
Nonetheless, as defendant points out, the question of the court's subject-matter jurisdiction can be raised at any time, even for the first time on appeal. See, e.g. , Daly and Daly , 228 Or. App. 134, 139, 206 P.3d 1189 (2009) ("[S]ubject matter jurisdiction is never waived and can be raised by any party or by the court sua sponte at any stage of the proceedings." (Internal quotation marks omitted.) ). We question whether the issue presented here is truly one of subject-matter jurisdiction. Cf. State v. Murga , 291 Or. App. 462, 466-67, 422 P.3d 417 (2018) (defendant's contention that a punitive contempt proceeding was not initiated in compliance with ORS 33.065, which requires an accusatory instrument, did not create a problem of subject-matter jurisdiction but, rather, presented a challenge to the court's authority to impose a punitive sanction). However, we need not resolve that question because, even assuming that it is-and, thus, that defendant is free to raise it this late in the litigation-we conclude that the record is sufficient to establish that the support order was transferred to Multnomah County Circuit Court in accordance with ORS chapter 25.
*5 Child support orders may be enforced through the court's contempt power. ORS 33.025(1) (power to impose sanctions for contempt of court "is an inherent judicial power"; procedures that apply are statutory); ORS 33.015 (2)(b) (" '[c]ontempt of court' " includes willful "[d]isobedience of, resistance to or obstruction of the court's authority, process, orders or judgments"). In addition, ORS 25.100 (2015) and ORS 25.110 (2015)[4] establish a mechanism for a circuit court in a county other than the one issuing an order to enforce compliance with the order. ORS 25.100(1) provides that, with respect to a child-support order (among other orders and judgments),
"if a party seeking *** enforcement of an order or judgment for the payment of money files a certificate to the effect that a *732 party is presently in another county of this state, the court may, upon motion of the party, order that certified copies of the files, records and prepared transcripts of testimony in the original proceeding be transmitted to the clerk of the circuit court of any county in this state in which the obligee or obligor resides, or in which property of the obligor is located."[5]
ORS 25.110(1), in turn, provides, in part:
"Upon receipt of such certified copies referred to in ORS 25.100, the circuit court of the county to which such certified copies have been transmitted shall have jurisdiction to compel compliance with such order or judgment the same as if it were the court which made and entered the original order or judgment for the payment of support."
Defendant contends that, here, "there was no evidence showing that the transfer occurred consistently with the procedures necessary to vest subject matter jurisdiction *6 in the Multnomah County Circuit Court."[6] We disagree. The state presented evidence that, in April 2012, defendant was sent a notice of intent that the Child Support Division was "filing the transfer from Clackamas County to Multnomah County and Court." Later that month, the state sent defendant notice of the actual filing of that transfer along with a copy of the packet that was filed with the court. A case manager for the District Attorney's Office, Multnomah County Child Support Division, testified that what is usually included in the packet is a copy of the orders, in this case, a copy of the Clackamas County orders. The state also offered as an exhibit a printout of defendant's SED case history record, which reflects Multnomah to be the "current county" and shows that a transfer order was entered on July 17, 2012. Given that undisputed evidence,[7] the record supports a finding that defendant's records were transferred to Multnomah County Circuit Court as contemplated in ORS 25.100 and, therefore, the court had jurisdiction to enforce compliance with the child-support order.
Affirmed.

As defendant acknowledges, he has paid only $201.48 in child support over the history of the case, and he owed $27,540 in arrears at the time of the contempt proceedings. He had been found in contempt, placed on probation, and had violated probation several times before the current proceeding. His child who is the subject of the support obligation reached the legal age of majority in 2015.

For example, defendant asserted at his arraignment that the court had "a fictitious account of my name on a paper, and I'm here to resolve that matter, and I'm not affiliated with the state." In his "Jurisdictional Challenge" affidavit, defendant asserted, "I am a man, not a corporation or a legal 'person' " and "I do not consent to this matter, and waive any stated or unstated benefit privilege. If I am here at all, I am here in special appearance to challenge jurisdiction and have this matter dismissed." He also demanded that the "prosecution and the court *** prove jurisdiction in light of," among other things, "[p]roof of jurisdiction, appearing on the record that the defendant is subject to commercial law and or the Uniform Commercial Code." (Boldface omitted.) The signature page included the notation "All Rights Reserved, UCC 1 -308/1-207," and defendant signed his name "Sui Juris" and provided a "postal service address" indicating "zip exempt." (Boldface omitted.) See James Erickson Evans, Comment, The "Flesh and Blood" Defense , 53 Wm. & Mary L. Rev. 1361, 1363, 1371-74 (2012) ("flesh and blood" defense is the embodiment of the "sovereign citizen" or "anti-government" movement); id. at 1372 (describing theories and practices of flesh and blood defense, which "centers on a lack of personal jurisdiction, as the defendant asserts he or she is not a 'corporate citizen' but a 'live flesh and blood man,' a 'sovereign citizen' ").

The court concluded that "the subject matter, the jurisdiction of the Court is invoked when under Chapter 33 of the Oregon Revised Statute[s] when the State files a proceeding to have you held in Contempt. That gives the Court subject matter jurisdiction."

We refer to the versions of ORS 25.100 and ORS 25.110 in effect at the time of these proceedings. Those statutes have since been amended. See Or. Laws 2017, ch. 252, §§ 3, 6.

The remaining subsections establish that the certified copies are "auxiliary" to those maintained in the original county, which remains the official record; that the original of an order entered in the auxiliary county be maintained in that county and a certified copy forwarded to the original county; and that the file number assigned in the original county "be the reference number for all purposes." ORS 25.100(2)-(4).

Defendant also contends that, even assuming the state presented some evidence of an effective transfer of the order to Multnomah County, we cannot consider ORS chapter 25 as providing a basis for the court's jurisdiction because the state did not raise the application of that chapter below, and its application does not meet the prerequisites for us to affirm the trial court on a right for the wrong reason basis. Defendant cannot have it both ways: If this indeed is a matter of the court's subject-matter jurisdiction, and thus can be considered for the first time on appeal, we are not constrained in the arguments that we consider to resolve that question.

To the extent that defendant argues that the transfer was ineffective because the trial court indicated that it did not have the complete case file, defendant misconstrues the record. What the court said was that the "electronic record" before the court was not complete because, "apparently, the entire file wasn't scanned." However, the prosecutor told the court that she had obtained all of the Clackamas County orders from the Multnomah County Circuit Court's file room, and the electronic case register for the contempt case identifies a related enforcement case that includes an entry confirming receipt of a certified copy of the Clackamas County case file.